UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


UNITED STATES OF AMERICA,                    Case No. 6:11-cr-60148-AA

        Plaintiff,                          OPINION AND ORDER

    v.

CECILIO GALAN,

        Defendant.

_____

AIKEN, Chief Judge:

    On April 17, 2014, defendant was sentenced to sixty-three months imprisonment for the distribution of child pornography and the possession with intent to distribute child pornography in violation of 18 U.S.C. §§ 2252(a) and 2252A. The government also sought restitution for "Cindy" and "John Doe IV," two identified victims. See id. § 2259(a) ("the court shall order restitution for any offense under this chapter").


1  -  OPINION AND ORDER

I granted the government's request to stay restitution until resolution of a case pending before the United States Supreme Court involving the appropriate causation standard required to allow restitution awards in child pornography cases. See Paroline v. United States, 134 S. Ct. 1710 (2014). On April 23, 2014, the Court issued its decision in Paroline; after the submission of briefing by both parties, I heard oral argument on June 12, 2014.

## DISCUSSION

The operative restitution statute, 18 U.S.C. § 2259, provides that "the court *shall* order restitution for any offense under this chapter" and "*shall* direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 2259(a),(b)(1) (emphasis added).[1] Thus, restitution is mandatory for child pornography offenses.

---

[1] "[T]he term 'full amount of the victim's losses' includes any costs incurred by the victim for—

    (A) medical services relating to physical, psychiatric, or psychological care;

    (B) physical and occupational therapy or rehabilitation;

    (C) necessary transportation, temporary housing, and child care expenses;

    (D) lost income;

    (E) attorneys' fees, as well as other costs incurred; and

2 - OPINION AND ORDER

Prior to Paroline, there was a Circuit split regarding the causal relationship required to award restitution in a child pornography case. The Ninth Circuit, along with most others, had held that § 2259 requires the government to establish proximate causation; i.e., "a causal connection between the defendant's offense conduct and the victim's specific losses." United States v. Kennedy, 643 F.3d 1251, 1262 (9th Cir. 2011); see also Paroline, 134 S. Ct. at 1719 (citing cases). However, the Fifth Circuit had "held that § 2259 did not limit restitution to losses proximately caused by the defendant, and each defendant who possessed the victim's images should be made liable for the victim's entire losses from the trade in her images, even though other offenders played a role in causing those losses." Paroline, 134 S. Ct. at 1718 (summarizing and citing In re Amy Unknown, 701 F.3d 749, 772-74 (5th Cir. 2012) (en banc)).

In Paroline, the Supreme Court vacated the decision of the Fifth Circuit and rejected the argument that a defendant convicted of possessing child pornography could be held liable for the full amount of a victim's losses. Instead, the Supreme Court imposed a standard of proximate causation: "Restitution is

---

(F) any other losses suffered by the victim as a proximate result of the offense."

18 U.S.C. §§ 2259(b)(3).

therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." Id. at 1722. At the same time, the Court disavowed a strict, "but-for" causation standard; reasoning that the purposes of § 2259, the unique harm suffered by child pornography victims, and the "atypical causal process" underlying the victims' losses supported the adoption of principles underlying the government's "aggregate causation" theory and a more flexible causation approach. Id. at 1723-24. The Court stated:

> It would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm. And it would be nonsensical to adopt a rule whereby individuals hurt by the combined wrongful acts of many (and thus in many instances hurt more badly than otherwise) would have no redress, whereas individuals hurt by the acts of one person alone would have a remedy. Those are the principles that underlie the various aggregate causation tests the victim and the Government cite, and they are sound principles.

Id. at 1724; see also id. at 1726 (reiterating that "aggregate causation theories" are not "irrelevant" in determining restitution). Ultimately, the Court held that a district court should order restitution "in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." Id. at 1727.

At the outset, I agree with a recurring theme trumpeted by the dissent in Paroline; that "full" restitution for child pornography victims cries out for a legislative, rather than

judicial, solution. See 134 S. Ct. at 1730-35 (Roberts, C.J., dissenting). The harm caused by the distribution and possession of child pornography cannot be understated; such conduct promotes and sustains the "market" created and manipulated by voyeuristic "consumers" of child sexual abuse and torture, and it contributes to the continuing abuse of children. As the Court recognized in Paroline:

> It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured. Harms of this sort are a major reason why child pornography is outlawed. The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse — including Paroline - plays a part in sustaining and aggravating this tragedy.

Id. at 1726 (citations omitted).

At the same time, the general principles of restitution imported into § 2259 are difficult to apply in child pornography cases, as they do not "account[] for the diffuse harm suffered by victims of child pornography." Id. at 1733 (Roberts, C.J., dissenting). In resolving this conflict, the Court approved a flexible causation standard tied to "the defendant's relative role in the causal process" rather than leave victims with no recourse. Id. at 1727. Nonetheless, "[t]his approach is not without its difficulties." Id. at 1729.

While I, like the Court, am confident of a district court's ability to implement the causation standard approved in Paroline, the results are unlikely to serve the stated purpose of § 2259 and fully compensate victims for their losses. As noted by the dissent, "experience shows that the amount in any particular case will be quite small - the significant majority of defendants have been ordered to pay Amy $5,000 or less. This means that Amy will be stuck litigating for years to come." Id. at 1734 (Roberts, C.J., dissenting) (citation omitted). Such piecemeal results hardly remedy the "continuing and grievous harm" caused by the repeated exploitation of child pornography victims. Id. at 1726. While I do not necessarily agree with the dissent that "[t]he statute as written allows no recovery," I certainly agree with the admonition that "Congress [should] fix it." Id. at 1735 (Roberts, C.J., dissenting).

Regardless, § 2259 mandates restitution, and the Supreme Court has given some guidance on how restitution should be determined in child pornography cases. I address the government's motion and defendant's objections accordingly.

In this case, defendant possessed child pornography and made it available for distribution on an internet file-sharing program. In total, defendant had 775 image files and 112 video files of child pornography. Of those images, ten were from the "Cindy" series of child pornography and four were from the "8

Kids" series and specifically included images of John Doe IV.
For Cindy, the government requests restitution in the amount of
$3,433, utilizing the method of calculation adopted by the Sixth
Circuit in United States v. Gamble, 709 F.3d 541, 554 (6th Cir.
2013). Under this method, the "pool" of losses incurred by Cindy
after the date of the instant offense is divided by the number
of standing restitution orders; in this case, 107. Id. For John
Doe IV, the government requests restitution in the amount of
$500. The government concedes that it has no updated information
regarding John Doe IV's losses but nonetheless argues that $500
is a reasonable amount and reflects defendant's relative role in
causing loss to John Doe IV.

Defendant responds that the evidence does not establish the
necessary causal connection between his offense conduct and the
requested restitution, because the government "makes no effort
to attribute any amount of [the victims'] losses to the
[underlying sexual] abuse itself, despite the likelihood that
the vast majority of the harm was caused by the abuse and not
the later viewing of images by child pornography offenders."
Def.'s Response at 4.[2] Defendant maintains that, under Paroline,

---

[2]Defendant also argues that the anonymity of the victims raises
due process and confrontation issues, in that he cannot
challenge the reliability of the expert reports or the experts'
veracity or potential bias in preparing them. However, while the
victims remain anonymous, the experts do not; their identities
and contact information are disclosed in the restitution packet,

7  -  OPINION AND ORDER

the harm caused by the initial abuse of the victims must be disaggregated from the harm caused by the subsequent distribution of their images before the court can seek to apportion losses caused by child pornography defendants. See Paroline, 134 S. Ct. at 1722 (noting that while it is "perhaps simple enough" to calculate a victim's "general losses" such as lost income and psychiatric treatment, "[c]omplications may arise in disaggregating losses sustained as a result of the initial physical abuse"). According to defendant, the government improperly attributes all of the victims' harm to child pornography defendants, and the court therefore cannot determine losses proximately caused only by the conduct of defendant and other child pornography offenders.

Defendant's argument rests on the assumption that the amount of "losses" incurred by a victim of sexual abuse and child pornography will necessarily correlate to the "harm" caused by each type of abuse. See Def.'s Response at 3-4, 7-8. Importantly, however, § 2259 does not attempt to provide a

---

along with their reports. Moreover, defendant concedes that both victims were harmed and suffered losses as a result of his conduct. Defendant's primary objection is that the causal evidence does not permit the calculation of losses proximately caused by his conduct unless the harm from the initial abuse is separated from the harm resulting caused the subsequent exploitation of that abuse. Therefore, I decline to address theoretical issues of confrontation and reliability in this case.

8  -  OPINION AND ORDER

remedy for any and all types of harm or injury (such as non-economic damages) suffered by a child pornography victim. Rather, the statute mandates restitution for specific "losses" proximately caused by a defendant's conduct. 18 U.S.C. § 2259(a),(b); compare id. § 2255(a) (allowing a child pornography victim to seek damages for personal injury). As defined, "losses" are the tangible, monetary losses incurred by a child pornography victim as a result of a defendant's conduct; they are distinct from the underlying – and often indivisible - harm the victim has suffered. Id. § 2259(b)(3). Thus, to seek restitution, the government need not engage in the virtually impossible and fruitless task of determining what percentage of a victim's "harm" was caused by the perpetrator of the initial abuse and what "harm" was caused by those who possessed and distributed the victim's images. Rather, the government need only establish that the victim has incurred losses - as defined by § 2259 - proximately caused by the defendant's conduct.

Further, notwithstanding the dictum providing rhetorical support for defendant's position, I find that Paroline all but rejected the underlying premise of defendant's argument.

> The cause of the victim's general losses is the trade in her images. And Paroline is a part of that cause, for he is one of those who viewed her images. While it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses.

9 - OPINION AND ORDER

*Paroline*, 134 S. Ct. at 1726. Granted, a contributing cause of a victim's losses under § 2259 may be the sexual abuse the victim suffered. Regardless, *Paroline* does not preclude restitution when the specific amount of losses caused by a specific defendant's conduct cannot be determined with precision. *Id.* ("Just as it undermines the purpose of tort law to turn away plaintiffs harmed by several wrongdoers, it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this."). Rather,

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images *but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry*, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.* at 1727 (emphasis added).

The Court recognized the difficulty of calculating an appropriate amount of restitution but noted that district courts often are faced with imprecise evidence:

> At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution.

10  -  OPINION AND ORDER

Id. at 1727-28. I do not find the Court's reasoning any less applicable to the circumstances of this case, particularly when the guidance provided by the Court - i.e., recognition of a defendant's "relative role in the causal process" - necessarily allows courts to consider contributing causes of losses. Thus, until the Ninth Circuit or the Supreme Court mandates the "disaggregation" of harm and/or losses caused by the underlying sexual abuse of child pornography victims, I will not require the government to do so when seeking restitution under § 2259.

With respect to Cindy, the evidence shows "outstanding losses caused by the continuing traffic in [Cindy's] images," Paroline, 134 S. Ct. at 1727, such that she "may never be able to escape from an abuse that continues without end." Psych. Eval. at 13.

> [Cindy's] current struggle to manage the repercussions of her sexual abuse experience ha[s] been significantly affected by the ongoing actions of those individuals who distribute her pornographic images and those who use her images for deviant sexual excitement. She knows that pornographic pictures of her as a child remain on the internet and continue to be available. This fact has an enduring negative impact on her emotional stability. . . . [To Cindy] [e]very man that possesses these pictures represents another person ready to abuse her, a person willing to abuse her today. Given this reality, she does not know how she can ever feel safe. She is constantly reminded that she is being violated every day. As a result, she experiences the emotional impact of her continuing abuse through an increased vulnerability to the crippling effects of anxiety and depression.

\* \* \*

[Cindy] reported that she is constantly reminded that pornographic images of her as a child are currently being viewed and traded by sexual deviants on the internet. Despite her best efforts, knowledge of this fact is often emotionally overwhelming. She has come to believe that she is powerless to stop her ongoing victimization from a seemingly endless number of past and present offenders. Knowledge of the actions of these individuals leads her to feel that she is being abused currently. She feels that each offender has chosen to abuse her rather than protect her. These thoughts are invasive and relentless. She reported that at these times she is vulnerable to the effects of extreme anxiety and depression. She has frequently been overwhelmed and incapacitated by her fears and chronic worries. Her inability to function at these times has led to failure in school and an inability to maintain employment. Significant depression has resulted in overwhelming urges to harm herself through self-inflicted cutting. On several occasions, she has planned or attempted to end her own life. *While the physical manifestation of her sexual abuse ceased several years ago, [Cindy] reported that she believes she may never be able to escape from the cycle of repetitive abuse brought on by the ongoing use and sale of her sexual abuse photographs by pedophiles and other offenders on the internet.*

[Cindy's] struggle to survive her sexual abuse experience is significantly affected by the current actions of those individuals who distribute pornographic images of her or who use her images for deviant sexual excitement. She is constantly reminded that at any time, a new offender can find, view and potentially distribute pornographic pictures of her as a child. [Cindy] stated that a part of her believes that she should be made aware of each offense against her. She thinks that she should be able to handle this reality without becoming overwhelmed. However, the repetitive and constant reminder of her abuse represented by the notifications has led her to re-experience the full emotional impact of the past abuse in her current life.

Id. at 13, 20-21 (emphasis added); see also Paroline, 134 S. Ct. at 1727 ("In a sense, every viewing of child pornography is a repetition of the victim's abuse.").

Given the evidence before the court, I find a proximate causal connection between defendant's conduct and the losses Cindy has incurred. Paroline, 134 S. Ct. at 1727-28; see also In re Amy & Vicky, 710 F.3d 985, 987 (9th Cir. 2013) (holding that the restitution record in a similar case provided "sufficient evidence to establish a causal connection between defendant's offense and [the victims'] losses" to support an award of restitution).

First, the knowledge that her images continue to be possessed and distributed renders Cindy vulnerable to "the crippling effects of anxiety and depression," causes her to "re-experience the full emotional impact of the past abuse in her current life," and leads her to believe that "she may never be able to escape from the cycle of repetitive abuse brought on by the ongoing use and sale of her sexual abuse photographs by pedophiles and other offenders on the internet." Psych. Eval. at 13, 20-21. Regardless of the underlying abuse she suffered, the continued trade in her images sustains and compounds the effects of that abuse, compromising her ability to "manage the repercussion of her sexual abuse experiences." Id. at 13. Losses Cindy has incurred as a result include future lost earnings,

13 - OPINION AND ORDER

medical expenses (for psychological and psychiatric treatment), a vocational rehabilitation evaluation, and expenses for an economic report. The evidence also indicates that Cindy will need "ongoing and intensive psychotherapy," though it does not appear that the government is seeking future expenses for such treatment. Psych. Eval. at 21; Gov't Mot. at 8.

Second, Cindy's losses result from the trade in her images, a trade defendant participated in and promoted. Indeed, defendant not only possessed Cindy's images, he made them available for distribution; his conduct thereby contributes to her continued and repeated victimization and the losses she has and will continue to incur as a result. Consequently, because "it is impossible to trace a particular amount of those losses" to defendant through traditional causal standards, this court will "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies" Cindy's losses. Paroline, 134 S. Ct. at 1727.

Third and finally, I find that the Gamble formulation proposed by the government leads to an application of § 2259 that satisfies Paroline and results in a reasonable and fair reflection of defendant's role in the causal process. See Paroline, 134 S. Ct. at 1728 (reciting factors relevant to the restitution calculation); Gamble, 709 F.3d at 554 (reasoning that "the number of convicted possessors is a reasonable divisor

14 - OPINION AND ORDER

[and] takes into account the fact that many individuals have contributed to Vicky's harms and puts the cost of treating those harms on this culpable and identifiable population"). While the government may not have "disaggregated" the harm caused by the initial abuse, its restitution calculation attempts to limit Cindy's "general losses" to those proximately caused by defendant and other child pornography offenders.

For example, the government seeks restitution for losses incurred since 2011, approximately ten years after Cindy's physical abuse ceased, and it seeks lost income based on a high school education, rather than a college education that Cindy could have likely attained if not for her sexual abuse. See Psych. Eval. at 7-8 (noting Cindy was a "bright and dedicated" high school student who "did well academically" and remains "highly motivated to achieve academically"). The government's self-imposed limitations on restitution adequately reflect the causal role of child pornography offenders in causing Cindy's losses, and the Gamble method fairly attributes those losses to defendants who have been convicted of possessing or distributing Cindy's images.

In sum, I find that Cindy has incurred losses as a result of the continuing trade in her images, and I adopt the Gamble calculation submitted by the government in calculating the

15 - OPINION AND ORDER

amount of restitution owed by defendant. Accordingly, I order restitution to Cindy in the amount of $3,433.00.

With respect to John Doe IV, the government concedes that it could not obtain updated information regarding the losses he has incurred. Nonetheless, the government asserts that the previous submission, along with the statement of John Doe's IV's adoptive mother, establishes that John Doe IV suffered losses proximately caused by defendant's conduct. Given the lack of updated information, the government does not propose the Gamble calculation to determine the amount of restitution. Rather, the government maintains that $500, or $125 for each image possessed by defendant, reasonably reflects defendant's relative role in the causing John Doe IV's losses.

As with Cindy, defendant concedes that he possessed John Doe IV's images and that John Doe IV suffered harm and losses as a result. However, defendant argues that the government's request for restitution in the amount of $500 contradicts the Supreme Court's edict against a "token or nominal amount." Paroline, S. Ct. at 1727. This argument misconstrues the Court's intended message in Paroline. In forbidding "token or nominal" restitution awards, the Court explained that the amount of restitution should be reasonably sufficient to convey the gravity of the offense and "impress upon offenders that their conduct produces concrete and devastating harms for real,

16  -  OPINION AND ORDER

identifiable victims." Id. It was not a prohibition against small restitution awards in all circumstances. Indeed, given defendant's concession that his actions caused harm and some amount of loss to John Doe IV, it is surprising that he would quibble over $500.

That being said, I am provided with a dearth of information from which to determine losses proximately caused by defendant's conduct. As defendant points out, the restitution submission does not provide an amount of losses incurred by John Doe IV after the instant offense, nor does it give any basis for calculating an amount of losses that could be fairly attributed to child pornography defendants. The information was provided in 2008, and I agree with defendant that it does not support an award of restitution for losses proximately caused by his conduct.

I also agree that the letter from John Doe IV's adoptive mother evinces the extent of the trauma and torment caused by the continued trade in his images. I have no doubt that John Doe IV and his family suffer great harm as a result of child pornography offenders; the heartache and grief expressed in the letter is palpable. However, the statute allows restitution only for specific losses, and the letter does not indicate whether John Doe IV has or will incur medical expenses for treatment or other losses within the meaning of § 2259.

17 - OPINION AND ORDER

Therefore, I regrettably cannot honor the government's restitution request for John Doe IV, even in the amount of $500.

CONCLUSION

The government's Motion for Restitution (doc. 41) is GRANTED in part. Defendant is ordered to pay $3,433.00 in restitution to Cindy. The court would like to award John Doe IV some amount of restitution; however, the evidence submitted does not allow the court to determine an amount of losses.

Though the court has awarded restitution, the negligible amount and the piecemeal process under § 2259 can hardly be considered a victory for Cindy and other victims like her. The current statutory process for restitution does not fully compensate losses suffered by child pornography victims and may, in fact, dissuade victims from seeking restitution; the end result is hardly worth yet another reminder of their continued exploitation. The court cannot remedy this problem. Rather, it is up to Congress to develop a system to truly compensate child pornography victims for the losses they continue to suffer.

IT IS SO ORDERED.

Dated this 11th day of July, 2014.


_____
Ann Aiken
United States District Judge


18 - OPINION AND ORDER